IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN R. GAMMINO, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 12-666-LPS |
| AMERICAN TELEPHONE & TELEGRAPH COMPANY, *et al.*, | : | |
| Defendants. | : | |

Julie M. Murphy, STRADLEY RONON STEVENS & YOUNG, LLP, Wilmington, DE
Jeffrey A. Lutsky, STRADLEY RONON STEVENS & YOUNG, LLP, Philadelphia, PA
W. Mark Mullineaux, ASTOR WEISS KAPLAN & MANDEL, LLP, Philadelphia, PA

 Attorneys for Plaintiff John R. Gammino.


John G. Day, ASHBY & GEDDES, P.A., Wilmington, DE
Joseph P. Kammit, NORTON ROSE FULBRIGHT US LLP, New York, NY
Richard S. Zembek, Daniel S. Leventhal, NORTON ROSE FULBRIGHT US LLP, Houston, TX

 Attorneys for Defendant AT&T Corp.


Benjamin J. Schladweiler, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE
Scott T. Weingaertner, WHITE & CASE LLP, New York, NY
Ketan Pastakia, WHITE & CASE LLP, New York, NY

 Attorneys for Defendant Verizon Communications Inc.


Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
David E. Finkelson, Derek H. Swanson, MCGUIREWOODS LLP, Richmond, VA
Robert C. Hilton, MCGUIREWOODS LLP, Dallas, TX

 Attorneys for Defendants Sprint Communications Company L.P., Sprint Spectrum, L.P., Nextel Operations, Inc., Virgin Mobile USA, L.P., and Sprint Nextel Corporation.

Richard L. Renck, Oderah C. Nwaeze, DUANE MORRIS LLP, Wilmington, DE
Douglas L. Sawyer, Kourtney Mueller Merrill, Laurie Rasmussen, PERKINS COIE LLP, Denver, CO

   Attorneys for Defendants CenturyTel Long Distance LLC, Embarq Payphone Services, Inc., Embarq Communications Inc., and Qwest Communications Company, LLC

## MEMORANDUM OPINION

September 8, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

Defendants AT&T Corp. (formerly known as American Telephone & Telegraph Company), Verizon Communications, Inc., CenturyTel Long Distance, LLC, Embarq Communications, Inc., Embarq Payphone Services, Inc., Qwest Communications Company, LLC, Sprint Communications Company L.P., Sprint Spectrum, L.P., Nextel Operations, Inc., Virgin Mobile USA, L.P., and Sprint Nextel Corporation (collectively, "Defendants") moved for Judgment on the Pleadings of Invalidity under 35 U.S.C. § 101 (D.I. 96) ("Motion") with respect to all claims of U.S. Patent No. 5,359,643 (the "'643 patent") for failure to claim patent-eligible subject matter. For the reasons discussed below, the Court will grant Defendants' Motion.[1]

## BACKGROUND

Plaintiff John R. Gammino sued Defendants on May 29, 2012, alleging infringement of the '643 patent. (D.I. 1) Defendants filed separate motions to dismiss Plaintiff's Complaint. (*See* D.I. 21, 31, 34, 37) The Court granted leave for Plaintiff to file an Amended Complaint on November 22, 2013 and denied Defendants' motions to dismiss the original Complaint as moot. (D.I. 58) Defendants answered the Amended Complaint in December 2013. (D.I. 59, 60, 61, 62) The Court entered a Scheduling Order on September 22, 2014. (D.I. 76)

On January 5, 2015, Defendants filed their Motion for judgment of patent ineligibility under § 101 pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (D.I. 96) The parties completed briefing on the Motion on February 20, 2015. (D.I. 97, 104, 111, 115, 116)

---

[1]Several of the Defendants have settled with Plaintiff. (*See* D.I. 168, 175)

1

The parties completed claim construction briefing on May 29, 2015.[2] (D.I. 120, 124, 126, 141, 142) The Court heard oral argument on the Motion, in addition to arguments relating to claim construction, on July 15, 2015. (*See* D.I. 164 ("Tr."))

The '643 patent, entitled "Telecommunications Device with Simplified Calling Procedures," generally discloses methods for placing telephone calls "through a central office from a telecommunications device." (*See* '643 patent at 1:41-43) It was filed on January 26, 1993 and issued on October 25, 1994. The claimed methods are generally directed to receiving a "telephone dialing digit" and a phone number, receiving payment information for a call, and completing the call if payment is adequate. (*See* '643 patent at 8:30-10:40)

## LEGAL STANDARDS

### Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial." When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). This is the same standard as applies to a Rule 12(b)(6) motion to

---

[2]All parties agreed that formal claim construction is not necessary to resolve Defendants' Motion. (*See* D.I. 97 at 16; D.I. 104 at 3-4; *see also* D.I. 164 at 23, 45-46) Plaintiff added, however, that in deciding the Motion, "the Court must apply Mr. Gammino's interpretation of the claims." (Tr. at 45) For purposes of deciding Defendants' Motion, the Court will construe the claims according to Plaintiff's proposed constructions of disputed terms and according to the parties' agreed upon constructions of undisputed terms, as articulated in the parties' Joint Claim Construction Chart. (*See* D.I. 120-1) In light of the disposition on the Motion, the Court will not resolve the parties' claim construction disputes.

2

dismiss. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Thus, a court may grant a motion for judgment on the pleadings (like a motion to dismiss) only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

The Court may consider matters of public record as well as authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). The Court may also take judicial notice of the factual record of a prior proceeding. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988). Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe*, 938 F.2d at 428.

The ultimate question of patent eligibility is an issue of law, making it an appropriate

3

basis for a Rule 12(c) motion. *See In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd* 561 U.S. 593 (2010). The Federal Circuit has affirmed District Courts that have granted motions for judgment on the pleadings based on § 101 challenges. *See, e.g., OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014),

**Lack of Patentable Subject Matter**

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Pertinent here is the third category, "abstract ideas," which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotation marks omitted). "As early as *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852), the Supreme Court explained that '[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.' Since then, the unpatentable nature of abstract ideas has repeatedly been confirmed." *In re Comiskey*, 554 F.3d 967, 977-78 (Fed. Cir. 2009).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue

4

are directed at a patent-ineligible concept. *See id.* If so, the next step is to look for an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.*

"Simply appending conventional steps, specified at a high level of generality, [is] not **enough** to supply an inventive concept." *Id.* at 2357 (internal quotation marks omitted; emphasis in original). In *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010), for example, the Supreme Court held that the claims involved were drawn to the patent-ineligible abstract idea of "hedging, or protecting against risk," which was a "fundamental economic practice." Similarly, in *Alice*, 134 S. Ct. at 2356, the Supreme Court found that the claims were drawn to the patent-ineligible abstract idea of "intermediated settlement," which was also a "fundamental economic practice." In both cases, the Supreme Court found that the additional steps delineated in the claims did not embody an "inventive concept" sufficient to ensure that the patents amounted to more than patents upon the ineligible fundamental concepts themselves.

In determining, at the second step, if a patent embodies an inventive concept, courts may consider whether the process "is tied to a particular machine or apparatus" or "transforms a particular article into a different state or thing." *Bilski*, 130 S. Ct. at 3225. "[T]o impart patent-eligibility to an otherwise unpatentable process under the theory that the process is linked to a machine, the use of the machine must impose meaningful limits on the claim's scope." *CyberSource Corp. v. Retail Decision, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) (internal quotation marks omitted). To be "a meaningful limit on the scope of the claims," the addition of a machine "must play a significant part in permitting the claimed method to be performed, rather

5

than function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010). Hence, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.*

"[T]he machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski*, 130 S. Ct. at 3227. However, it is "not the sole test for deciding whether an invention is a patent-eligible 'process.'" *Id.* "[I]n applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal citation and quotation marks omitted). The "concern that drives the exclusionary principle [i]s one of pre-emption." *Id.* That is, where a patent would pre-empt use of basic tools of scientific and technological work, *i.e.*, laws of nature, natural phenomena, and abstract ideas, the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted).

## DISCUSSION

Defendants argue that all claims of the '643 patent are patent-ineligible under the analytical framework set forth in *Mayo* and *Alice*. (*See* D.I. 111 at 1) Specifically, Defendants argue that "the '643 patent is directed to an abstract, fundamental commercial practice" of

6

"selecting a method of payment for a service." (D.I. 97 at 2) Defendants further argue that "[t]he claims do nothing more than apply that concept to a particular field, telephony, using generic, conventional technology." (*Id.*)

Plaintiff responds that Defendants mischaracterize the underlying concepts of the claimed invention by reducing the invention to just one of its steps and ignoring the "technical language" of the claims. (*See* D.I. 104 at 1-2) Plaintiff argues that the invention of the '643 patent is not directed to an abstract idea but instead is "tied to specialized telephone system components and physical signals." (*Id.* at 2) Plaintiff highlights the "precisely ordered series of four steps" in representative claim 1 and argues that the invention is "closely tied to a specific technology" designed to solve the problem of user confusion as to the "proper operation" of telephones. (*Id.* at 5)

The '643 patent includes only method claims, and the parties agree that claim 1 is representative of all claims. (*See* D.I. 104 at 2; D.I. 111 at 1; *see also* Tr. at 9, 25) The Court agrees with the parties that claim 1 is representative of all claims of the '643 patent. Thus, the Court's analysis of claim 1 will determine the patent eligibility of all claims. *See Alice*, 134 S. Ct. at 2359-60 (2014) (finding 208 claims patent-ineligible based on analysis of single, representative method claim); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (quoting and approving district court's analysis of representative claim limitations).

Claim 1 recites the following:

> A method for placing a telephone call through a central
> office from a telecommunications device according to a desired
> method of making payment, said method comprising the steps of:

7

> receiving a first plurality of signals which represent a telephone
> dialing digit not including "0" followed by a multi-digit phone
> number, said telephone dialing digit being independent of the
> desired method of making payment;
>
> receiving at least one further signal which indicates said desired
> method of making payment for said telephone call after said
> multi-digit phone number has been received;
>
> providing for payment of said telephone call according to said
> desired method of making payment; and
>
> placing said telephone call by transmitting a plurality of Dual Tone
> Multiple Frequency signals representing said multi-digit phone
> number to said central office.

Plaintiff argues, and Defendants do not appear to dispute, that claim 1 of the '643 patent is directed to an improvement of an "existing technological process" and, therefore, that claim 1 falls under the "process" or "improvement thereof" categories of § 101. (D.I. 104 at 7) The parties' dispute centers on whether claim 1 also comes within the "abstract idea" exception to patent-eligible subject matter. *See Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

Plaintiff argues that "the Court should assume that the method recited in claim 1 of the '643 patent is new and non-obvious because Rule 12(c) requires the Court to construe the claims in the manner most favorable to Mr. Gammino." (D.I. 104 at 20) This argument is unpersuasive for a number of reasons. First, patent eligibility is a question of law, *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014), and Plaintiff has cited no disputed facts that would need to be viewed in a light most favorable to Plaintiff for purposes of the Court's § 101 analysis.

Second, to the extent that Plaintiff is requesting that the Court adopt his proposed claim constructions for purposes of deciding the Motion (*see* Tr. at 45), the Court will do so, and (for

8

purposes of the Motion) construes the limitations of claim 1 according to Plaintiff's proposed constructions. Hence, there are no facts relevant to claim construction that need to be interpreted in a light most favorable to Plaintiff. *See generally Content Extraction*, 776 F.3d at 1349 (approving District Court's determination at Rule 12(b)(6) stage that, "even when construed in a manner most favorable to [patent owner], none of [patent owner's] claims amount to 'significantly more' than [an] abstract idea").

Finally, regarding Plaintiff's request that the Court view the '643 patent as "new and non-obvious," the more proper approach is to consider the rules of patentability, including §§ 102 and 103's novelty and non-obviousness requirements, in deciding whether claim 1 is directed to patent-ineligible subject matter. The Federal Circuit has encouraged District Courts to evaluate "considerations analogous to those of [35 U.S.C.] §§ 102 and 103" as part of a "pragmatic analysis of § 101" at the motion to dismiss stage. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015). "Courts have found guidance in deciding whether the allegedly abstract idea (or other excluded category) is indeed known, conventional, and routine, or contains an inventive concept, by drawing on the rules of patentability." *Id.* Thus, the Court is not required to presume that the '643 patent is new and non-obvious.

### *Mayo* Step 1: Are the claims directed to a patent-ineligible "abstract idea"?

"Under step one of *Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Active Network*, 790 F.3d at 1346. In arguing that claim 1 is not directed to an abstract idea, Plaintiff relies heavily on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248 (Fed. Cir. 2014). (D.I. 104 at 12-

9

14) However, it is unclear whether *DDR Holdings* turned on an analysis under step 1 of *Mayo/Alice*. In fact, the Federal Circuit stated in *DDR Holdings* that "[i]dentifying the precise nature of the abstract idea" there was "not as straightforward as in *Alice* or some of our other recent abstract idea cases," and the Court appeared to rely primarily on its step-2 analysis in deciding the case: "as discussed below, under any of these characterizations of the abstract idea, the [patent-in-suit]'s claims satisfy *Mayo/Alice* step two." *Id.* at 1257. Thus, the Federal Circuit's step-1 analysis in *DDR Holdings* may have been *dicta*. In addition, to the extent *DDR Holdings* made a determination under step 1, the Federal Circuit did not precisely articulate the abstract idea to which the patent claims were directed.[3] Therefore, Plaintiff's reliance on *DDR Holdings* for its step-1 analysis is questionable. Nonetheless, the Court will analyze claim 1 of the '643 patent under both steps 1 and 2.

Plaintiff argues that claim 1 addresses "problems that exist *because of* the apparatus" on which claim 1 may be implemented (e.g., a telephone) as opposed to the claims at issue in *Bilski* and *Alice*, which were directed to abstract ideas that could be implemented using generic computer technology. (D.I. 104 at 13) (emphasis added) Plaintiff identifies the functionality that purportedly distinguishes claim 1 from the type of claims at issue in *Alice* and *Bilski* as follows:

> As explained in the background of the '643 patent, "because of the large number of choices by which a telephone call may be paid for, some users of telecommunications devices may be confused as to the proper operation of such devices." ('643 patent at 1:29-32) Accordingly, the '643 patent addresses a problem unique to telecommunications devices . . . .

---

[3] *See TriPlay, Inc. v. WhatsApp Inc.*, 2015 WL 1927696, at *11 (D. Del. Apr. 28, 2015) *report and recommendation adopted by* 2015 WL 4730907 (D. Del. Aug. 10, 2015) (noting that *DDR Holdings* did not explicitly state whether claims at issue were or were not directed to abstract idea and collecting District Court cases showing uncertainty on this point).

(D.I. 104 at 12) The Court does not agree that claim 1 addresses problems that exist because of the telecommunications device on which claim 1 may be implemented (i.e., a telephone).[4] The portion of the '643 patent's specification excerpted above identifies the actual source of the "problems" to which claim 1 is directed: "the large number of choices by which a telephone call may be paid for." But there is nothing unique to telephones about having a large number of choices with which to pay for a service.[5] Thus, the Court rejects Plaintiff's argument that claim 1 is directed to solving problems that exist because of telephones.

Plaintiff further attempts to distinguish claim 1 from the claims at issue in *Bilski* and *Alice* by arguing that claim 1 is not directed to a "fundamental economic practice." (D.I. 104 at 13) However, the Supreme Court did not "delimit the precise contours of the 'abstract ideas' category" in *Alice*, and Plaintiff cites no authority for the suggestion that "abstract ideas" are limited to fundamental economic practices. *See Alice*, 134 S. Ct. at 2357. In any event, the Court concludes that claim 1's "character as a whole" *is* directed to a fundamental economic practice.

The Court agrees with Defendants that claim 1 is directed to the abstract idea of "allowing a buyer to select a method of payment for a service." (D.I. 111 at 2) Although only two of the four steps recited in claim 1 are explicitly related to selecting a method of payment (i.e., step 2, "receiving at least one further signal which indicates said desired method of making

---

[4]The parties agree that the "telecommunications device" recited in claim 1 is a telephone. (*See* Tr. at 18, 39; *see also* D.I. 120-1 at 1)

[5]Almost any service can (and at the time of the invention could have been) paid for in a variety of ways. The Court does not view this fact to be subject to any genuine dispute – and Plaintiff has not suggested that evidence needs to be developed on this point.

11

payment for said telephone call after said multi-digit phone number has been received," and step 3, "providing for payment of said telephone call according to said desired method of making payment"), when viewed as a whole, the combination of claim 1's four steps is directed to the abstract idea of allowing a buyer to select a method of payment for a service. The two steps that are not explicitly related to selecting a method of payment relate to a particular service: placing a telephone call. However, "limiting the use of an abstract idea to a particular technological environment" is "not enough for patent eligibility." *Alice*, 134 S. Ct. at 2358 (internal quotation marks omitted).

Moreover, claim 1 bears similarities to other types of subject matter that the Federal Circuit has found to be patent-ineligible. *See Content Extraction*, 776 F.3d at 1347 (determining claims directed to collecting data, recognizing data, and storing data to be abstract); *Cybersource*, 654 F.3d at 1373 (finding claims for "obtaining credit card information relating to [consumer] transactions," "utilizing [a] map of credit card numbers to determine if the credit card transaction is valid," and "verifying the credit card information . . . based upon parameters . . . that may provide an indication whether the transaction is fraudulent" to be directed to abstract idea); *buySAFE*, 765 F.3d at 1355 (holding that "receiving a request" and "transmitting an offer in return" were abstract concepts). Like the claims at issue in these earlier cases, claim 1 recites limitations directed to receiving and transmitting information; and even viewed as a whole, claim 1 is directed to the receipt, processing, and transfer of information. All of this further supports a conclusion that claim 1 is directed to an abstract idea.

Plaintiff warns that "[i]f the defendants were to prevail in this case, few, if any, inventions directed to improved methods of using devices would be eligible for patent

12

protection." (D.I. 104 at 7) Plaintiff provides no evidence for its contention. Anyway, it is inapposite as claim 1 does *not* embody any technological improvement (as is evident from the fact that the "benefits" of claim 1 could be accomplished by placing a sticker on a telephone, explaining to users the order in which to dial particular information).

In sum, claim 1 amounts to nothing more than an arbitrary set of steps defining how a conventional telephone may be used to select a method of payment and complete a call, not unlike a user's manual for any number of long-extant devices. Thus, the Court concludes that representative claim 1 of the '643 patent – and, therefore, all of its claims – is directed to an abstract idea. It is necessary, then, to proceed to the second step of the analysis.

### *Mayo* Step 2: Do the claims include an "inventive concept" sufficient to "ensure that the patent in practice amounts to significantly more" than a patent upon an ineligible concept?

The claims of the '643 patent may still be patent-eligible if they include an "inventive concept" sufficient to "ensure that the patent in practice amounts to significantly more" than a patent upon an ineligible concept. *Alice*, 134 S. Ct. at 2355. The Supreme Court and Federal Circuit have held that there is no "inventive concept" if a claim recites an abstract idea implemented using "generic" technology to "perform well-understood, routine, and conventional activities commonly used in the industry." *Content Extraction*, 776 F.3d at 1347 (citing *Alice*, 134 S. Ct. at 2359). The '643 patent's claims are implemented using generic telephony technology that existed well before the priority date of the '643 patent. (*See, e.g.*, D.I. 111 at 3) (citing Plaintiff's website and acknowledging that telephones and calling card technology existed by 1939)[6]

---

[6] Plaintiff has not disputed these facts nor argued that the Court should not consider the materials cited by Defendants. Plaintiff also specifically agreed that the Court could consider a

13

Plaintiff argues that claim 1's limitation reciting a "plurality of signals representing the telephone dialing digit" that is "independent of the desired method of making payment" is a "patentably distinctive limitation" satisfying the inventive concept requirement of the *Mayo* test. (*See* D.I. 104 at 15) The Court disagrees that this limitation qualifies as an inventive concept. As Defendants point out, this limitation could be implemented, for example, by dialing an operator to place a collect call to a particular number and explaining (independently via another voice "signal") how the call should be billed. (*See* D.I. 111 at 5) This is well-understood, conventional, and routine functionality that has been practiced for many years before the priority date of the '643 patent. (*See, e.g.*, '643 patent at 1:14-38, 5:21-27) (reciting prior art telephone functionality and use of "live operator" in conjunction with "standard 'dumb' telecommunications device")

Even if one or more of the "signals" in claim 1 must be produced using non-voice signals, such as Dual Tone Multiple Frequency ("DTMF") signals or any other signals that could be used with a standard "dumb" telephone (*see* '643 patent at 6:53-7:42), these signals would not save the '643 patent from patent ineligibility. (*See, e.g.*, '643 patent at 2:16-28) (reciting "standard" telephone "which operates in conjunction with an exemplary embodiment of the present invention" and identifying prior art "AT&T Public Phone 2000" as example of such "standard" telephone) Using these signals is the type of "routine[,] additional step" that "does not transform an otherwise abstract idea into patent-eligible subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

Plaintiff also argues that the ***order*** of the steps in representative claim 1 is evidence of an

---

paper written by the inventor. (*See* Tr. at 46-47)

14

inventive concept.[7] (D.I. 104 at 15-16) Again, the Court disagrees. The order of the steps in claim 1 was either chosen arbitrarily (as in the case of receiving the dialing digit and phone number before payment information) or was necessary in light of the conventional operation of generic telecommunications equipment (as in the requirement to receive the destination number and payment information before completing payment and placing a call). Moreover, as in *Mayo*, the "ordered combination" of steps in claim 1 follows from the underlying abstract idea and, therefore, cannot qualify as an inventive concept. *See* 132 S.Ct. at 1298. Therefore, the Court finds that claim 1, when viewed as a whole, does not include an inventive concept.

Plaintiff additionally argues that claim 1 "does not preempt every application" of the abstract idea to which it is directed and that claim 1 is not as broad as, for example, the claims at issue in *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 757 (Fed. Cir. 2014). "[A]lthough courts have framed the 'second-step' analysis in terms of preemption, there is no rule that ideas that do not preempt an entire field are per se patent eligible. Rather, the test as articulated by *Alice* is that there must be an inventive contribution on top of the underlying abstract idea." *Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, 2015 WL 436160, at *5 (D. Del. Jan. 27, 2015). As the Supreme Court explained in *Alice*, the focus of the second step of the *Mayo* test is whether the claims "***disproportionately*** t[ie] up the use of the underlying ideas." 134 S. Ct. at 2354 (emphasis added; internal quotation marks omitted). The Court concludes that the claims of the '643 patent disproportionately tie up use of the underlying ideas of the '643 patent. For example, the dependent claims of the '643 patent are

---

[7]The parties agree that the steps in claim 1 "must be performed in the order in which the steps are listed." (D.I. 120-1 at 1)

15

directed to a broad array of payment methods that could be used to make a telephone call. (*See* '643 patent at 8:50-9:27, 10:6-40)

Moreover, the Federal Circuit recently clarified the significance of preemption analysis under § 101: "Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, ***preemption concerns are fully addressed and made moot***." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (emphasis added). The Court finds that claim 1 discloses only patent-ineligible subject matter. Therefore, Plaintiff's preemption arguments are moot.

Plaintiff argues that claim 1 satisfies the "machine-or-transformation" test. (D.I. 104 at 17) The Court disagrees. Claim 1 does not satisfy the machine-or-transformation test because neither the claims nor the specification of the '643 patent recite *any* machine that plays a "***significant*** part in permitting the claimed method to be performed." *SiRF Tech.*, 601 F.3d at 1333 (emphasis added). Rather, the "standard" telephone equipment recited as implementing the claimed invention ('643 patent at 2:16) is used "solely as an obvious mechanism for permitting a solution to be achieved." *SiRF Tech.*, 601 F.3d at 1333.

Plaintiff analogizes claim 1 to the claims at issue in *DDR Holdings* and *Diamond v. Diehr*, 450 U.S. 175 (1981), arguing that claim 1 recites a telecommunication system that does not "operate in its normal, expected manner" and "improve[s] an existing technological process." (D.I. 104 at 14-19) To the contrary, claim 1 does not recite *any* improvement to the telecommunications device itself. Instead, as discussed above, the claims recite standard use of a conventional telephone in its normal, expected manner. The fact that claim 1 recites a particular order of dialing information does not qualify as a technological improvement. Likewise, the fact

16

that claim 1 is embellished with industry-specific jargon such as "Dual Tone Multiple Frequency" and "central office" (*see* '643 patent at 8:47-49) does not change the Court's analysis.

"Simply appending conventional steps, specified at a high level of generality, [is] not ***enough*** to supply an inventive concept." *Alice,* 134 S. Ct. at 2357 (internal quotation marks omitted; emphasis in original). Yet, conventional steps, specified at a high level of generality, are the sum total of what claim 1 attempts to monopolize. Although claim 1 is limited to a particular technological environment – telephony – this is not enough for patent eligibility. *See id.* at 2358.

Therefore, the Court determines that claim 1 – and, thus, all claims of the '643 patent – is ineligible under § 101, because it is directed to an abstract idea and includes no inventive concept under *Mayo/Alice*.

## CONCLUSION

For the reasons given above, all claims of the '643 patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101. The Court will grant Defendants' Motion. An appropriate order follows.